**Charles R. SCANTLIN and Deborah Sue Scantlin, his wife, Plaintiffs–Respondents,**

v.

**CITY OF PEVELY, Missouri, a Municipal Corporation, Defendant–Appellant.**

No. 51981.

Missouri Court of Appeals, Eastern District, Division Two.

Nov. 10, 1987.

Motion for Rehearing and/or Transfer Denied Dec. 10, 1987.

Cyril J. Clancy, Kirkwood, for defendant-appellant.

Joseph Cunningham, Festus, for plaintiffs-respondents.

PUDLOWSKI, Judge.

Respondents, Charles R. and Deborah Sue Scantlin, brought this action in the Circuit Court of Jefferson County against the appellant, the City of Pevely, Missouri, alleging that the appellant's sewer system constituted a nuisance and requesting damages to compensate them for the overflow of sewage into the ground floor of their home on June 24, 1985. The jury found in favor of respondents and awarded them $12,000 in damages.

Appellant contends that the trial court erred in not directing a verdict in its favor or in the alternative in not entering a judgment notwithstanding the verdict because the applicable statute of limitations, Section 516.120, RSMo 1986, had run and respondents' action was thus time barred and because respondents had previously signed a release which barred them from bringing this action. In the alternative, appellant argues that the trial court erred in failing to submit the statute of limitations and release issues to the jury and in failing to grant a new trial on that basis. Appellant also argues that the trial court improperly admitted evidence pertaining to cost of repairs and damages for "loss of use;" and that the court improperly admitted estimates of professional repair costs when respondent Charles Scantlin had done the work himself. Finally, appellant argues that the trial court improperly gave MAI 4.01 as the measure of damage instruction, where the theory was permanent nuisance and MAI 4.02 was the proper instruction. The judgment is affirmed.

As a preliminary matter, in the case at bar, we must first determine whether this was a permanent or temporary nuisance action. Count I alleged "[o]n numerous occasions, Plaintiffs have requested that Defendant [appellant] repair said sewer and abate the nuisance. The Defendant has failed to abate the nuisance; and, as a result, Plaintiffs' home remains subject to periodic sanitary sewer back-up which has destroyed the value of said home because said nuisance is permanent in nature."

▪ Under our system of code pleading, it is the facts set forth in the petition and the relief sought to which one looks to determine the plaintiff's theory rather than the form of the petition. *Alarcon v. Dickerson*, 719 S.W.2d 458, 461 (Mo.App.1986). A poor choice of words is not sufficient to defeat a cause of action. *Gaffney v. Community Federal Savings & Loan Assn.*, 706 S.W.2d 530, 533 (Mo.App.1986). Although inartfully drafted, we find that the petition adequately pleads in the alternative, both on the facts and the relief sought, a theory of temporary nuisance and a theory of permanent nuisance. Under circumstances in which the allegations are ambiguous, a court will treat the action as one for temporary nuisance because adjudication of a permanent nuisance amounts to a grant of an easement to the wrongdoer to continue to interfere with the plaintiff's land. *Rebel v. Big Torkio Drainage District*, 602 S.W.2d 787, 794 (Mo.App.1980).[1] The trial court correctly determined that this action should be one for temporary nuisance,[2] which is the cause of action pursued by the plaintiffs at trial.

▪ Appellant is correct in its assertion that the five year statute of limitations set out in Section 516.120, RSMo 1986, is applicable to the cause at bar. Accepting appellant's vigorous assertion that the nuisance was permanent in nature, the limitations period for a permanent nuisance does not begin to run until "completion of the installation or when the effect of injury becomes manifest," whichever is later. *Rebel*, 602 S.W.2d at 792. *See also*, *Schwartz v. Mills*, 685 S.W.2d 956, 959 (Mo.App.1985), citing *Rebel*. The system did not manifest itself as a possible private nuisance affecting respondents or the previous owners of the respondents' home until the first time it overflowed sending raw sewage into their basement in 1983. There was no evidence that the respondents or their predecessors in interest had suffered any injury or had knowledge of the likelihood that they would suffer injury until 1983; therefore, the statute of limitations for a permanent nuisance had not expired.

▪ In the case at bar, however, respondents proceeded to trial on their claim for a temporary nuisance, and the statute of limitations, therefore, did not begin to run until June 24, 1985. Neither the existence of a sewer system nor the local government's control of that system would cause any obvious injury to a homeowner in the area served by the system. Rather the existence of a sewer system would generally increase instead of decreasing the value of homes in an area. "Where the inherent character of a structure in usual operation does not cause injury, but becomes harmful through negligence, the cause of injury can be abated, and the source of injury is a temporary nuisance." *Rebel*, 602 S.W.2d at 794. The statute of limitation stated in Section 516.120, RSMo 1986, had not run, and respondents action was not time barred.

---

1. *Rebel* was disapproved in *Frank v. Environmental Sanitation Management, Inc.*, 687 S.W.2d 876 (Mo. banc 1985) to the extent that it holds that a nuisance cannot be maintained without proof of the described conduct on the part of the defendant. *Frank* affirms the holding in *White v. Smith*, 440 S.W.2d 497 (Mo.App.1969) which explains that nuisance is an effect rather than a cause of tort liability. The court's disapproval of *Rebel*, however, does not involve the issue of whether a nuisance is temporary or permanent in nature.

2. Appellant directs our attention to *Stewart v. City of Springfield*, 350 Mo. 234, 165 S.W.2d 626, 631 (1942) for the proposition that municipal sewer systems have been consistently held to be permanent nuisances but fails to note that the proposition was questioned in *Hillhouse v. City of Aurora*, 316 S.W.2d 883, 887 (Mo.App.1958). The *Hillhouse* opinion explained that the reason for the rule was no longer valid because of the "scientific advances" in the field.

■ We next address the issue of the release admittedly signed by the respondents in April of 1983 after the appellant compensated them for the 1983 back-up of sewage in their lower level. Appellant argues that if the nuisance was permanent, and they strenuously argue that it was, then only one cause of action arose, and only one release was needed to release them from liability for all time. If we were willing to conclude that the nuisance was permanent, that might be the case, given a clearly worded release to that effect. However, the release signed by the respondents stated that it was to release the city from liability "arising out of an occurrence that happened on or about the 2[nd] day of February 1983."

When respondents' lower level again was flooded in November of 1984, appellant did not assert a general release. It paid respondents for their damages. Appellant contends that the trial court erred in failing to give MAI 32.21 [3] submitting the affirmative defense of a valid release signed by respondents. What appellant ignores is that there was no issue as to whether respondents had signed a release. They freely admitted that they had. The only issue regarding the release was whether it was a general release of appellant from all liability related to its operation of the sewer system or whether it was a release of appellant only from any liability relating to the February 2, 1983 incident. The release by the clear meaning of its terms did only the latter.

Since there were no disputed facts related to whether the statute of limitations had run or to the validity or wording of the release, there were no issues for jury resolution. The evidence would not have supported a finding that the statutory period had run or that the release was from any and all liability arising from the operation of a sewer system. Therefore, the trial court did not err in failing to submit the "issues" of the release and the statute of limitations to the jury. *See, Kuehle v. Patrick,* 646 S.W.2d 845, 847 (Mo.App. 1982).

■ We next address the issue of whether the proper damage instruction was given in this case. Appellant, as noted above, argues that only a theory of permanent nuisance was pled and that the proper damage instruction was therefore MAI 4.02 and not MAI 4.01 which was actually submitted.[4] We agree with appellant that in a permanent nuisance action the correct measure of damage is based on before and after values and is improperly submitted by MAI 4.01. *Bower v. Hog'Builders, Inc.,* 461 S.W.2d 784, 797–798 (Mo.1970); *Stewart v. Marshfield,* 431 S.W.2d 819, 822–824 (Mo.App.1968). Nevertheless, the trial court properly gave MAI 4.01, which is the appropriate instruction in a cause involving a temporary nuisance. *Spain v. City of Cape Girardeau,* 484 S.W.2d 498, 504–505 (Mo.App.1972).

■ Moreover, in this case the proper measure of damages would have been cost of repair, even if the respondents had alleged only a permanent nuisance.

Where the injury is extensive or permanent the measure of damages is the reduction in the overall value of the property as a whole; in contrast, where the injury is slight—when compared with the overall size and value of the realty—and the injury can readily be remedied by repair, then the measure of damages is the expense of restoration. The latter method is not inconsistent with the former. This, because in the case of slight injury the cost of repair logically reflects the amount the property was reduced in value.

---

3.  MAI 32.21 reads:
    Your verdict must be for the defendant if you believe:
    First, plaintiff signed and delivered the release to defendant, and
    Second, plaintiff was paid $___ for such release.

4.  We note that MAI 4.02 is not the correct damage instruction in a permanent nuisance cause. The correct damage instruction in such a cause is MAI 9.02. *See Spain v. City of Cape Girardeau,* 484 S.W.2d 498, 504–505 (Mo.App.1972) and the MAI Notes on Decisions following MAI 9.02.

*Smith v. Norman*, 586 S.W.2d 84, 85 (Mo. App.1979).

We next address the issue of whether the trial court prejudicially erred in admitting evidence involving estimates of the cost of repairs, and damages resulting from "loss of use."[5] We find no such error. Appellant points out that respondents did not plead damages for "loss of the use" of their lower level during the period required for restoration. At trial respondent Charles Scantlin, however, testified that the rental value of his home was $600 per month and that only half of his home was useable during the restoration process. What appellant ignores is that the cost of restoration plus the damages resulting from loss of use during the period required for restoration is the appropriate damage figure in a case involving property damage resulting from a temporary nuisance. *See Fletcher v. City of Independence*, 708 S.W.2d 158, 178 (Mo.App.1986); and *Spain v. City of Cape Girardeau*, 484 S.W.2d at 505. There is no requirement that "loss of use" damages be specifically pled. *Weller v. Haynes Truck Lines*, 197 S.W.2d 657, 664 (Mo. banc 1946).

Finally, we address appellant's claim that the trial court improperly allowed a professional contractor to testify to his estimate of the cost of repairing the damage from the June 24, 1985 back-up where respondent, Charles Scantlin, had elected to do the work himself and had, therefore, not paid a professional contractor. The fact that the witness was testifying to estimates and not to actual charges is the basis for appellant's objection here.

We have examined the record, however, without finding any objection on that basis at trial. The only basis on which appellant's counsel objected at trial to the contractor's testimony was that it related to cost of repairs which appellant asserted was "an improper measure of damages." When, as here, the admissibility of evidence is attacked in the the trial court on one ground only, ..., a different objection to the evidence may not be "advanced on appeal." *Halford v. Yandell*, 558 S.W.2d 400, 404 (Mo.App.1977). "Appellant cannot broaden the scope of his objection on appeal from the precise objection made at trial ... Nor can appellant raise new grounds of objection on appeal." *State v. Hodges*, 586 S.W.2d 420, 427 (Mo.App. 1979). Appellant's objection is therefore not preserved. *See* Rule 78.09 of the Missouri Rules of Civil Procedure.

The judgment of the trial court is affirmed.

STEPHAN, P.J., and DOWD, J., concur.

---

**5.** Appellant does not argue that he was prejudiced by the introduction of evidence of diminution in value when combined with evidence of cost repairs and loss of use damages.