**STATE of Missouri, Assignee,**

**Connie Sheets, Respondent,**

v.

**Ronnie Joe HALL, Appellant.**

**No. WD 47239.**

Missouri Court of Appeals,
Western District.

Dec. 14, 1993.

Betsy Ann Stewart, Ahmann, Stewart & Nixon, P.C., Independence, for appellant.

Jacqueline A. Sommer, Asst. Pros. Atty., Jackson County, Kansas City, for respondent.

Before BERREY, P.J., and BRECKENRIDGE and SMART, JJ.

SMART, Judge.

This case arises from an action for declaration of paternity, an order of child support and reimbursement of state support paid. Ronnie Joe Hall appeals from the trial court's order requiring Hall to pay child support in the amount of $384.00 per month and requiring Hall to reimburse the State of Missouri for money paid to Connie Sheets for the support of her minor son.

On June 29, 1990, the State of Missouri, assignee, and Connie L. Sheets, individually,

and as next friend of the minor child Kevin M. Sheets ("respondents") filed their combined petitions for declaration of paternity under the Uniform Parentage Act (§§ 210.817–.852, RSMo 1987) for an order of child support and for recovery of necessary support provided for the minor child.

At trial, the state presented evidence of blood test results, income tax returns and testimony from both Connie Sheets and appellant. The child was born May 1, 1987. The blood tests established the probability of paternity at 99.45%. Ms. Sheets testified that she had received public assistance from the State of Missouri beginning in June 1987. She received Aid to Families with Dependent Children ("AFDC") payments in the amount of $226.00 per month from June 1987 to September 1991, which were later increased to $234.00 per month until October 1991. She testified that she used the funds received to support both her son and herself, since she was unemployed during this time period. In October 1991, she began working for the Division of Family Services ("DFS") as a caseworker. For the past three years and five months prior to trial, appellant had worked as a car salesman at Galen Boyer Motors.

After considering the evidence presented, the trial judge entered his order finding that appellant was the biological father of the minor child and requiring appellant to pay $384.00 per month in child support and $7,512.00 for reimbursement to the State for payments made for support of the minor child. Appellant appeals from that portion of the trial court's order requiring him to reimburse the State and to pay prospective child support. Paternity is not an issue in this appeal. Appellate review of this court-tried case is governed by *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976), and the judgment must be affirmed unless it is clearly against the weight of the evidence or it erroneously declares or applies the law.

*Reimbursement of State Support Provided*

 Appellant contends that the trial court erred in finding that $7,512.00 provided by DFS to Respondent Sheets was entirely expended for the necessary support of the minor child because the court failed to apply or improperly construed and applied § 210.828(2) and § 210.841(4) and (5). The state claims that although the petition contains the term "necessary support," Count III is not seeking reimbursement for "necessary support" under the UPA, but is seeking reimbursement of "state debt" under § 454.465, RSMo 1986. The "state debt" is comprised of the total amount of monetary benefits furnished through AFDC payments provided to Respondent Sheets for support of the minor child. The state concedes that the petition's caption does not correctly state the cause of action for count III. Nevertheless, citing *Scantlin v. City of Pevely*, 741 S.W.2d 48, 50 (Mo.App.1987), the state claims that this court must look to the facts set forth in the petition and the relief sought to determine their theory of recovery rather than the form of the petition.

The caption atop respondents' petition reads as follows: "COMBINED PETITION FOR DECLARATION OF PATERNITY UNDER THE MISSOURI UNIFORM PARENTAGE ACT FOR AN ORDER OF SUPPORT AND FOR RECOVERY OF NECESSARY SUPPORT PROVIDED." The first paragraph in respondents' petition specifically states that the action was commenced under the Uniform Parentage Act, § 210.817 et seq., RSMo 1987. In Count III of the petition, respondents specifically incorporate the allegations of Count I, including paragraph 1, and request judgment for "reimbursement of necessary support" of the minor child, a key phrase found in the UPA. This action was clearly brought under the UPA allowing recovery for necessary expenses for support of a minor child and did not constitute an action for reimbursement of state debt under § 454.465. Neither the term "state debt" nor any reference to § 454.465 appear in respondents' petition. *Scantlin,* the case relied upon by respondents, involved a petition seeking damages for nuisance. The petition, which pleaded alternative theories of temporary and permanent nuisance, was ambiguous. It was held that the trial court could properly treat the action as one for a temporary nuisance. 741 S.W.2d at 50. Here, there is simply no way

to construe the petition as including a claim under § 454.465. The petition is not ambiguous. Although a certain degree of flexibility is allowed in pleading a cause of action, a party cannot completely stray from a specifically pleaded statutory theory of recovery and claim that the theory intended was an altogether different statutory theory.

■ In an action for reimbursement of necessary support, movant has the burden of proving the actual amounts of necessary expenses incurred for the support of the child. *A.V. v. G.V.*, 726 S.W.2d 782 (Mo.App.1987). Respondents failed to present evidence of the actual necessary expenses of caring for the child for the five years since his birth. Instead, respondents approached the trial of the case as they would if they had pleaded a cause of action for recovery of state debt under § 454.465. Appellant Hall, on the other hand, approached the case as it was pleaded. Appellant apparently did not realize until part way through the hearing that respondents were trying the case as a "state debt" case. Even after the close of the evidence, appellant was maintaining that the respondents had no right to rely upon a "state debt" theory. Consequently, it cannot be said that the issues under § 454.465 were tried by consent.

■ Respondent Sheets failed to show with particularity the actual necessary expenses incurred in support of the minor child. She testified almost exclusively to current household expenses and child care expenses, never specifically enumerating the expenses incurred in the past. Her pre-trial interrogatory answer, which was received in evidence as an admission, showed itemized monthly expenses totalling $128.15 for telephone, lights, gas, water, and trash. Although the interrogatory clearly asked for "expenses," the interrogatory was answered as though it were addressing only utilities, since nothing was included for groceries, rent, or other normal expenses. The trial court, and this court, could reasonably believe that the interrogatory was misunderstood as asking for utility expenses, rather than all expenses.

The trial court ordered appellant to reimburse the state for the entire amount of the AFDC payments. Little evidence was introduced on the minor child's expenses and the evidence clearly showed that, for the entire time she received AFDC, Ms. Sheets was attending school rather than working, and using the AFDC money to support herself as well as her son. In view of the fact that the funds were supporting both Ms. Sheets and her child, one reasonable approach, consistent with our duty to interpret the facts in the light most favorable to the judgment, would be to allocate one-half of what was supposedly her entire income to the necessary support of the child. The evidence—actually, the lack of evidence—suggests no better approach. We could, as suggested by appellant, hold that the only expenses established were those itemized in the interrogatory answer—for a total of $128.15. However, to do so would not constitute our viewing all the evidence in the light most favorable to the judgment. Therefore, we hold that the trial court should have found the "necessary expenses" to be one-half of the AFDC total ($7,512.00). The trial court erred in ordering appellant to pay $7,512.00 for reimbursement to the state. The judgment is reversed to the extent it orders Appellant Hall to pay the state $7,512.00, and the case is remanded to the trial court with instructions to enter judgment for the state, as assignee, against appellant Hall in the amount of $3,756.00 as "necessary expenses" which the state is entitled to recover.

### Award of Child Support

Next, appellant asserts that the trial court erred in failing to find that it was unjust and inappropriate to follow Missouri Supreme Court Rule 88.01 in the completion of Form 14 in that the trial court failed to consider all relevant factors as enumerated in Rule 88.01 and § 210.841(5).

Adjudication of child support awards is governed by Rule 88.01. Rule 88.01 creates a rebuttable presumption that the child support amount calculated pursuant to Form 14 is the amount of support to be awarded in a dissolution of marriage action. The rule further provides that the presumption can be rebutted only if the court makes a written or specific finding on the record that the Form

14 child support calculation is "unjust or inappropriate."

The trial court found at the time of trial that Ms. Sheets had an average monthly gross income of $1,516.00, that appellant had an average monthly gross income of $1,806.00, that Ms. Sheets incurred a monthly expense of $70.00 for medical insurance coverage for the minor child, and that she incurred reasonable work related child care expenses of $216.00 per month. The trial court ordered appellant to pay child support in the amount of $384.00 per month in accordance with Form 14 and Rule 88.01. Appellant does not contend that the trial court's figure was an erroneous calculation, but that the trial court should have entered a finding that the amount was unjust or inappropriate after consideration of the factors enumerated in Rule 88.01 and § 210.841(5).

Respondent Connie Sheets was employed at the Department of Family Services as a caseworker at the time of trial. Her income had just increased to $1,516.00 per month. Prior to her employment with DFS, she held no permanent job.

Appellant Hall, currently employed as a car salesperson, previously sold real estate. In 1987, he received gross commissions in the amount of $12,424.14, and in 1988, he received gross commissions in the amount of 18,656.25. At the time of trial, appellant had worked at Galen Boyer Motors for approximately three years and five months. Appellant was required to work forty-four hours per week. He generally worked sixty-nine hours a week, generating an annual income ranging from $18,000.00 to $22,000.00. His guaranteed base pay each month was $750.00. Appellant's annual income included non-cash prize points which could be exchanged for merchandise ranging from $900.00 to $3,000.00 per year. Appellant was also furnished a vehicle in lieu of a $200.00 per month car allowance. Galen Boyer paid insurance and taxes for the automobile.

■ Appellant suggests that the trial court erred in employing Form 14 and basing the child support award on appellant's income, which was based on a sixty-nine hour work week. Appellant contends that such an approach works an injustice to the emotional needs of the child and is contrary to the public policy of the State because it forces Mr. Hall to continue working 69 hours per week. Appellant asserts that the trial court should have prorated his income, for child support purposes, to a forty hour week instead of a sixty-nine hour work week. This, appellant claims, would insure his availability to have frequent and meaningful contact with the minor child so as to provide for the child's emotional needs. Appellant contends the trial court abused its discretion in the way it conducted its child support calculation.

Appellant's usual work week consists of six days. He works from 8:00 a.m. to 9:00 p.m. on three days a week, and from 8:00 a.m. to 6:00 p.m. three days a week, and takes Sundays off. Although appellant's work schedule is not conducive to his being able to spend substantial time with his child, appellant does have three evenings a week and Sundays to schedule time with the minor child. Appellant is correct that the court should consider the needs of the child and the public policy of the state in encouraging visitation. However, the appellant is not necessarily correct in his assertion that the trial court gave no consideration to such matters. There is no evidence as to the exact degree of impact on appellant's income which might result if he were to reduce his work hours in order to spend time with his child. Presumably, as in most sales jobs, some of his sixty-nine hours are more lucrative than others. Any adjustment would be purely speculative, even as to whether appellant actually would take more time for his child. This is not a case in which the court has attributed income to appellant which is higher than he has been earning, as though the court were forcing him to work many more hours. Instead, the court simply utilized the figures for what appellant had actually been earning. Here, we have a parent who has been working 69 hours, but now *states* that he wishes to work less so that he may spend time with his child. The trial court may have discounted the sincerity of his expression of intention. We are confident that the trial court considered all the factors applicable, including the importance of Mr. Hall taking time for his child. Appellant has not shown

an abuse of discretion. Based on the record before us, the trial court was not required to pro-rate appellant's earnings to forty hours per week for purposes of the child support calculation.

Appellant also suggests that a different amount should have been used in determining child support for work-related child care expenses. He claims that Ms. Sheets put the minor child into a private school, raising the expense from $35.00 per week to $50.00 per week. Respondent Sheets testified that once she began working it was necessary for her to find a school with before and after school care and that she could not find a school that charged less than $50.00 per week.

The trial court had all the pertinent evidence before it in making its child support determination. Neither party produced evidence of any unusual circumstance or expense which would have necessitated the trial court's deviation from the Form 14 calculated guideline amount. The trial court used the current income amounts of both parties in calculating the child support award. Thus, the trial court did not err in its calculation. Point II is denied.

### Conclusion

The judgment is reversed to the extent that it orders Appellant Hall to pay the sum of $7,512.00 to the state under Count III, and the case is remanded to the trial court with the instruction to enter judgment for the state, as assignee, against Appellant Hall in the amount of $3,756.00 as "necessary expenses" recoverable under Count III of the petition. The balance of the judgment is affirmed.

All concur.